IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02279-CMA-NRN

TERANCE D. WILSON,

Plaintiff,

v.

JOHNSON, Lt., C.S.P.,
VAUGHN, C.O., C.S.P.,
WHITE, Sgt., C.S.P.,
WILDA, Lt., B.V.C.F.,
WILL, Sgt., C.S.P.,
MASCERENAS, Lt., C.S.P.,
JORDAN, C.O., C.S.P.,
HAGAN, Lt., C.S.P.,
WOOD, Lt., B.V.C.F.,
LISSOME, Sgt., S.C.F.,
CORDONA, Sgt., S.C.F., and
SWINGLE, Lt., S.C.F.,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## CDOC DEFENDANTS' MOTION TO DISMISS (DKT. #38)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #40) issued by Judge

Christine M. Arguello referring Defendants Lieutenant Johnson, Correctional Officer

Vaughn, Sergeant White, Lieutenant Wilda, Sergeant Will, Lieutenant Mascarenas,

Correctional Officer Jordan, Lieutenant Hagans, Lieutenant Wood, and Lieutenant

Swingle's (collectively "Defendants")[1] Motion to Dismiss. Dkt. #38. Plaintiff Terance D.

---

[1] Mr. Wilson's Prisoner Complaint also asserts claims against Defendants Sgt. Lissome and Sgt.
Cordona. However, in its Waiver of Service of Summons filed on behalf of the other Defendants,

Wilson filed a response (Dkt. #47), and Defendants filed a reply.[2] Dkt. #49. The Court heard argument on the subject motion on February 18, 2020. *See* Dkt. #52. The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **RECOMMENDED** that that the subject motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Plaintiff's Complaint

Mr. Wilson, proceeding pro se, initiated this lawsuit on August 9, 2019, and the following factual allegations are taken from his Prisoner Complaint (Dkt. #1) and accepted as true for the purposes of Defendants' motion to dismiss.

Mr. Wilson alleges two claims with subparts under 42 U.S.C. § 1983. First, he alleges multiple incidents of excessive force by prison staff in violation of the Eighth Amendment, including being attacked by guards at Defendant Wilda's direction; an attack by Defendants Vaughn and Jordan on January 17, 2019; failure to prevent the

---

the Colorado Department of Corrections' ("CDOC") Office of Legal Services indicated that "[t]here is not record of a Sgt Lissome or Sgt Cordona as either current or former DOC employees." *See* Dkt. #9. Moreover, the CDOC identified two of the individuals named in the Prisoner Complaint as Lieutenant Mascarenas and Lieutenant Hagans, respectively, and the Court will refer to them by their correct names.

[2] On February 5, 2020, Mr. Wilson filed a "Reply in Support of Opposition to Defendants' Motion to Dismiss" (Dkt. #50), and on February 10, 2020, he filed an "Attachment to Motion to Oppose Defendants' Motion to Dismiss." Dkt. #51. This Court's local rules contemplate only the filing of responses and replies to motions; they do not contemplate surreplies. *See* D.C.COLO.LCivR 7.1(d). Moreover, Judge Arguello's Civil Practice Standards explicitly provide, "No surreply or supplemental briefs shall be filed without permission of the Court." CMA Civ. Practice Standard 7.1A(d)(4). Mr. Wilson did not seek leave of Court to file his surreply or supplement, and they are hereby stricken and will not be considered by the Court in ruling on the motion to dismiss.

January 17, 2019 attack by Defendants Will and Hagans; and retaliation in violation of the First Amendment by Defendant Swingle on July 25, 2019. Dkt. #1 at 6–8.

Second, he alleges a failure to protect in violation of the Eighth Amendment and retaliation in violation of the First Amendment. *Id.* at 9–12. More specifically, he alleges that Defendants Hagans, Johnson, and White knew of a threat to him posed by other inmates and did nothing, and when he was attacked by such inmates on April 18, 2018, resulting in a broken jaw, Defendants Hagans, Johnson and White then covered up and lied about the incident. He further alleges that he was attacked again by the same inmates in September 2018, even though Defendants Wilda and Wood knew of the threat. Finally, he alleges Defendants Vaughn, Swingle, and Mascarenas retaliated against him for filing lawsuits. Plaintiff requests declaratory relief and money damages. *Id.* at 14.

Mr. Wilson's practice of jumbling his claims together with little regard to his own organizational framework is evident throughout his Prisoner Complaint. In this Recommendation, the Court orders the claims for relief into three categories, irrespective of how they were titled: (1) Eighth Amendment excessive force; (2) Eighth Amendment failure to protect; and (3) First Amendment retaliation.

**B. Defendants' Motion to Dismiss**

Defendants filed the subject motion to dismiss on January 3, 2020. Dkt. #38. In it, they ask that the Court dismiss Mr. Wilson's Prisoner Complaint pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. Defendants argue that Mr. Wilson's excessive force claim does not allege sufficient personal participation as to Defendants Wilda, Will, and Hagans, and his failure to protect/deliberate

3

indifference claim does not allege personal participation with respect to any of the Defendants. *Id.* at 6–15. Finally, Defendants contend that Mr. Wilson failed to plausibly plead sufficient facts demonstrating that Defendants Vaughn, Jordan, Mascarenas, or Swingle's alleged conduct constituted retaliation in violation of the First Amendment. *Id.* at 15–17. Accordingly, Defendants maintain that they are entitled to qualified immunity. *Id.* at 4–5.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiff

Mr. Wilson is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

4

**B. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Plausibility means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court

considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

At the same time, however, the "Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *Sylvia v. Wisler,* 875 F.3d 1307, 1326 (10th Cir. 2017) (internal quotation marks omitted). Even under *Iqbal/Twombley*, "that standard is still fundamentally one of notice pleading intended to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *Id.* A complaint need not provide detailed factual allegations;

rather, "it must give just enough factual detail to provide 'fair notice of what the claim is and the grounds upon which it rests.'" *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Twombley*, 550 U.S. at 555).

## III. ANALYSIS

### A. Qualified Immunity

Defendants argue they are entitled to qualified immunity because Mr. Wilson failed to demonstrate that his federal constitutional rights were violated. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, it is important to bear in mind that because this defense is being evaluated in relation to a Rule 12(b)(6) motion, Defendants are subjected "to a more challenging standard of review than would apply on summary

judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As a result, it is Defendants' conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Thus, when "addressing the issue [of qualified immunity] at the motion to dismiss and not the summary judgment stage, [a] [p]laintiff is only required to allege a constitutional violation that is plausible on its face." *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *2 (N.D. Okla. Jan. 6, 2009).[3]

With these principles in mind, the Court will address Mr. Wilson's constitutional claims.

## B. Eighth Amendment Claims

Mr. Wilson alleges that Defendants violated his Eighth Amendment rights by subjecting him to excessive force and failing to protect him from being assaulted by other inmates.

### 1. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. "The use of excessive force by jail officials

---

[3] It is not uncommon for courts to defer ruling on qualified immunity until the summary judgment stage. *See, e.g.*, *Harvey v. Gonzalez*, No. 14-cv-02174-RBJ-NYW, 2015 WL 13730685, at *7 (D. Colo. Nov. 24, 2015), *report and recommendation adopted*, No. 14-cv-002174-RBJ-NYW, 2015 WL 9462057 (D. Colo. Dec. 28, 2015) (reasoning that ruling "on Defendant's assertion of qualified immunity . . . is an inquiry better suited for summary judgment once a factual record is developed."); *Torres v. White*, No. 08CV196JHPFHM, 2009 WL 37617, at *3 (N.D. Okla. Jan. 6, 2009) (same); *cf. Maxey by Maxey v. Fulton*, 890 F.2d 279, 281 (10th Cir. 1989) (district court's order denying Rule 12(b)(6) motion to dismiss "did not conclusively and finally deny [defendant]'s entitlement to qualified immunity, but merely deferred that issue pending development of a sufficient factual record").

violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'" *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). What constitutes unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*, 475 U.S. at 320).

An excessive force claim requires this Court to analyze two prongs: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotations and citations omitted). The objective element of the claim is "contextual and responsive to contemporary standards of decency." *Id.* (quoting *Hudson*, 503 U.S. at 8). In analyzing the subjective element of an excessive force claim, the core judicial inquiry examines whether the force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm. *See Whitley*, 475 U.S. at 320-21. When balancing these competing concerns of the subjective prong, the Court will consider that prison officials often make their decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* (citing *Whitley*, 475 U.S. at 320). However, a prison official who observes the imposition of excessive force upon a prisoner at the hands of another but who take no steps to protect the prisoner can be liable under the Eighth Amendment. *See Merritt v. Hawk*, 153 F. Supp. 2d 1216,

9

1224 (D. Colo. 2001) (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994); *Sasa v. Zavaras*, 166 F.3d 1222 (10th Cir. 1998) (unpublished)).

Although Mr. Wilson's first claim is titled "Cruel and Unusual Punishment: 'Excessive Force' & 'Guard Brutality,'" in reality it asserts failure to protect and retaliation claims as well. The actual excessive force claim seems to revolve around two discrete incidents occurring on December 19, 2018 and January 17, 2019, respectively.

### a. The December 19, 2018 Incident

The first incident happened upon Mr. Wilson's transfer to Buena Vista Correctional Facility ("BVCF"). Due to his notoriety, Mr. Wilson was immediately threatened by other inmates, which Mr. Wilson reported to Defendant Wilda. Dtk. #1 at 6. The two apparently have a history; Mr. Wilson alleges that two months earlier, Defendant Wilda had "caused and facilitated an assault" on him. *Id.* Defendant Wilda "threatened" Mr. Wilson and told other correctional officers to "tie him up and march him up to his cell." *Id.* Mr. Wilson was then marched all around the unit while inmates shouted about killing and raping him. *Id.* At some point, he was body slammed by the correctional officers and tasered in his back twice. *Id.*

The Court will assume without deciding that being body slammed and tasered twice while handcuffed meets the objective prong of the excessive force inquiry. However, the Court finds that the Prisoner Complaint does not allege sufficient personal participation on the part of Defendant Wilda with respect to allegations involving excessive force. Personal participation is an essential element of a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged

constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10thCir. 1993). A supervisor can only be held liable for his own deliberate intentional acts. *See Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."). Three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Mr. Wilson does not allege that Defendant Wilda was one of the guards who body slammed and used a taser on him. Although he claims he was "threatened" by Defendant Wilda, Mr. Wilson neither specifies what that threat entailed nor alleges that Defendant Wilda directed the unnamed guards to assault him. Instead, Mr. Wilson states that Defendant Wilda told the officers to "tie him up and march him up to his cell." This order, on its own, cannot be construed as instructions for what followed. In short, while Mr. Wilson may have an excessive force claim against the correctional officers who tackled and fired a taser at him, he does not have such a claim against Defendant Wilda.

### b. The January 17, 2019 Incident

The January 17, 2019 incident occurred one day after Mr. Wilson was returned to the Colorado State Penitentiary ("CSP"), where he alleges he was beaten and stomped by Defendants Vaughn and Jordan in a coordinated attack. In addition to naming Defendants Vaughn and Jordan responsible for the attack, Mr. Wilson claims that he

informed Defendant Hagans when he arrived at CSP that he was in danger from "every gang and some staff." Dkt. #1 at 6. Mr. Wilson alleges that Defendant Hagans set a "chain in action by placing me in seg[regation], then after he learned what Vaughn was doing he made no attempt to intervene[.]" *Id.* at 8. He makes a similar claim against Defendant Will, the supervisor of the unit where the attack occurred. Mr. Wilson claims that Defendant Will was aware that Defendant Vaughn was "expressly prohibited from being around" Mr. Wilson, and his "failure to supervise" allowed the attack to happen.

In their reply brief, Defendants' clarify that they are not moving to dismiss Mr. Wilson's excessive force claim against Defendants Vaughn and Jordan. *See* Dkt. #49 at 2 n.1. Thus, the Court will focus on the allegations against Defendants Hagans and Will.

As to Defendant Hagans, the Court acknowledges that the failure to intervene in another officer's unconstitutional conduct may be sufficient to show personal participation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983."). However, Defendant Hagans was not alleged to have been present during the January 17, 2020 beating. Thus, he could not have intervened to prevent the excessive use of force. Mr. Wilson points to the fact that he had a meeting with Defendant Hagans where Defendant Hagans states that he was informed by several inmates that they witnessed Defendant Vaughn assault Mr. Wilson. Dkt. #1 at 7. This meeting took place on January 19, 2020, after the incident. Thus, the failure to intervene theory is not viable on the facts presented in the Prisoner Complaint.

Mr. Wilson's claim against Defendant Will is premised solely on his supervisory authority. *See* Dkt. #1 at 7 ("His [Defendant Will] failure to supervise caused C.O.

12

Vaughn to be able to assault me."). Without an allegation of personal participation, Mr.
Wilson does not state a claim for relief for excessive force. While Mr. Wilson alleges that
Defendant Will was aware that Defendant Vaughn was not supposed to be around Mr.
Wilson, he does not allege that Defendant Will knew Defendant Vaughn was
disregarding this alleged prohibition, either in general or specifically on the day of the
assault. In other words, there is no causal connection between Defendant Will's alleged
failure to supervise and the incident of excessive force, nor allegations that Defendant
Will had the requisite culpable mental state.

Accordingly, Mr. Wilson's Eighth Amendment excessive force against
Defendants Hagans and Will claim should be dismissed without prejudice.

### 2. Failure to Protect/Deliberate Indifference

A violation of the Eighth Amendment occurs when a prison official is deliberately
indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511
U.S. 825, 828 (1994). Although prison officials have a duty to protect inmates from
violence at the hands of other inmates, not every injury resulting from violence between
inmates results in constitutionally liability. *Id.* at 833–34. An inmate asserting an Eighth
Amendment claim must demonstrate: (1) that the harm was "sufficiently serious" under
an objective standard; and (2) that the prison officials had "subjective knowledge of the
risk of harm" but did nothing to prevent such harm. *Howard v. Waide*, 534 F.3d 1227,
1236 (10th Cir. 2008).

First, to satisfy the objective component of the standard, an inmate "must show
that he is incarcerated under conditions posing a substantial risk of serious harm."
*Farmer*, 511 U.S. at 834. A prison official's "act or omission must result in the denial of

'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Next, to satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the prison official did in fact "draw the inference." *Id.* at 837. "[D]eliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835 (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 1. Defendant Hagans

Construing the Prisoner Complaint liberally, Mr. Wilson alleges that Defendant Hagans was deliberately indifferent on four occasions. The first was in relation to the January 17, 2019 assault on Mr. Wilson by Defendants Vaughn and Jordan. This claim fails because Mr. Wilson does not allege that Defendant Hagans was aware that Defendants Vaughn and Jordan posed a threat to Mr. Wilson. Although Mr. Wilson claims that before the incident he spoke with Defendant Hagans about being the target of "every gang and some staff," he does not allege that he identified those staff members as Vaughn and/or Jordan. Nor can the January 19, 2019 meeting, during which Defendant Hagans stated he had heard from inmates who witnessed the attack, form the basis of any Eighth Amendment liability. As this meeting occurred after the incident, it is irrelevant to the question of whether Defendant Hagans had prior knowledge of the risk of harm posed by Defendants Vaughn and Jordan. Finally, it is unclear what Mr. Wilson thinks Defendant Hagans should have done in this situation; he placed Mr. Wilson in segregation rather than general population, after all. Therefore, Mr.

14

Wilson does not adequately allege the subjective component of the deliberate indifference standard.

The second occasion concerns an April 18, 2018 assault on Mr. Wilson by another inmate named Dorian Lovato, during which Lovato broke Mr. Wilson's jaw with a sucker punch. Dkt. #1 at 9. The Court finds that the objective component has been suitably pled. An attack on an inmate that results in a broken jaw is a sufficiently serious harm. The Court also finds that the subjective component has been met. Mr. Wilson claims that several inmates informed Defendant Hagans (and, as discussed below, Defendants White and Johnson) of their intent to harm Mr. Wilson if he did not get moved out of the pod. *Id.* Specifically, Mr. Wilson states that Lovato himself informed Hagans "on numerous occasions . . . that he was being pressured to assault" Mr. Wilson. *Id.* Mr. Wilson also claims that Defendant Hagans was well-aware of the "over 60 incidents of attempts to kill, stab and seriously injure" Mr. Wilson. These allegations are specific enough to survive a challenge under 12(b)(6).

Third, Mr. Wilson states that Defendant Hagans assisted in covering up the Lovato assault and lied that the fight was instigated by Mr. Wilson. *Id.* at 9–10. This led to Mr. Wilson and Lovato to again being placed in the same pod when he was transferred to BVCF. *Id.* at 10. On September 13, 2018, Lovato and four other inmates "jumped" Mr. Wilson, apparently stabbing him and breaking his hand. *Id.*

The risk that an inmate who had already broken another inmate's jaw would further assault him when placed in the same pod is substantial enough to meet the objective prong. And there is no question that, according to the Prisoner Complaint, Defendant Hagans was or should have been aware of this risk. Mr. Wilson adequately

alleges that Defendant Hagans deliberately ignored the danger Lovato posed to Mr. Wilson when he lied about and covered up for the April 18, 2018 assault, which led to Lovato and Mr. Wilson being confined in close proximity. The Court acknowledges that there may be facts unearthed in discovery that break the chain of causation between the two events. For example, it is unclear what authority Defendant Hagans, a corrections officer at CSP, has over the placement decisions at BVFC. However, that issue is better left to summary judgment.

Finally, Mr. Wilson claims that Defendants Johnson and Hagans knew that Mr. Wilson would be assaulted when he was transferred to Sterling Correctional Facility ("SCF") in October 2018, and rather than attempting to protect him, they told prison transport to "get [him] there by whatever means." *Id.* at 11. When he arrived at SCF, Mr. Wilson claims he was immediately jumped, although he was not injured in the confrontation. *Id.* These allegations likewise satisfy both components of the deliberate indifference standard.

Reading his non-conclusory allegations in the light most favorable to Mr. Wilson, the Court finds that the Prisoner Complaint states a facially plausible deliberate indifference/failure to protect claim against Defendant Hagans. It was clearly established well before 2018 that a prison official violates the Eighth Amendment when he displays deliberate indifference to "conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Thus, Defendant Hagans is not entitled to qualified immunity at this early stage in the proceedings.[4]

---

[4] Defendants' motion to dismiss focuses only on whether Mr. Wilson has alleged constitutional violations. They do not address the "clearly established" component of the qualified immunity

### 2. Defendant Will

To the extent that Mr. Wilson's Prisoner Complaint can be interpreted as asserting a deliberate indifference claim against Defendant Will, that claim has the same deficiency as the excessive force claim discussed above. Specifically, there is no allegation that Defendant Will was aware that Defendant Vaughn was actively harassing Mr. Wilson prior the January 17, 2019 incident. Instead, Mr. Wilson claims that "after the incident Sgt. Will said he was not told until after the incident that Vaughn was not supposed to be around me, which goes to his 'state of mind.'" Dkt. #1 at 7. Again, whether Defendant Will knew that Defendant Vaughn was not to be around Mr. Wilson is not especially relevant. Even accepting that Defendant Will was lying and did know that of the restriction, the question is whether Defendant Will knew that Vaughn *was violating* that restriction. That allegation is missing. Accordingly, Mr. Wilson's claims against Defendant Will should be dismissed.

### 3. Defendant White

Next, the Court finds Mr. Wilson's claim that Defendant White failed to protect him from the April 18, 2018 assault by Lovato should go forward. The Prisoner Complaint alleges that, like Defendant Hagans, Defendant White was told that other inmates, and Lovato specifically, were planning on attacking Mr. Wilson. *Id.* at 9. Mr. Wilson asserts that not only did Defendant White ignore those threats, he had allowed inmates to openly drink on the day of the assault. As a result, when Mr. Wilson was

---

analysis. This Recommendation does not foreclose Defendants from raising this issue at a later stage in the litigation.

punched and his jaw broken, Defendant White delayed in calling for medical assistance for an hour, during which Mr. Wilson's "jaw cracked twice more and a tooth fell out." *Id.*

Not only do these allegations state a claim that Defendant White was deliberately indifferent to the threat posed by Lovato, they also state a claim that he was deliberately indifferent to Mr. Wilson's serious medical needs by refusing to get him medical attention for a broken jaw because, as Mr. Wilson alleges, "he didn't want the brass to write us up for drinking." *Id.* Accordingly, this claim should not be dismissed.

### 4. Defendant Johnson

Like Defendants Hagans and White, Mr. Wilson asserts that Defendant Johnson knew that Lovato presented a substantial risk to Mr. Wilson's safety, but ignored the danger, which resulted in his jaw being broken. *Id.* He also alleges that Defendant Johnson, with Defendant Hagans, covered up the assault, which, in turn, led to the September 19, 2018 attack. *Id.* at 9–10. Mr. Wilson further claims that Defendants Johnson and Hagans made sure that he was transferred to SCF despite knowing inmates would attempt to kill him there. *Id.* at 12. In addition, Defendant Johnson is alleged to have repeatedly threatened Mr. Wilson, going so far as to tell other inmates that he would "hook them up" if they were to "jump" Mr. Wilson. *Id.* at 11–12.

The reasons given above for permitting Mr. Wilson's deliberate indifference claim to proceed against Defendants Hagans and White apply with equal force to Defendant Johnson. Accordingly, the Court recommends that this claim proceed.

### 5. Defendants Wilda[5] and Wood

---

[5] As previously noted, the Prisoner Complaint is difficult to parse at times. To the extent that it purports to assert a failure to protect claim against Defendant Wilda in connection with Mr. Wilson being tackled or tased by the six or eight unnamed guards, the claim fails. Again, Mr.

Mr. Wilson alleges that on September 13, 2018, while housed at BVCF, he informed Defendants Wilda and Wood "about threats made by the individual who had broken his jaw three months prior and was going around with comrades threatening to stab Wilson." *Id.* at 10. When he asked to be moved away from these men, Defendant Wood laughed at him. *Id.* Then, on September 18, 2018, "several inmates came into Wilson cell with a sharpened prison shank." *Id.* Wilda and Wood were informed and performed a shakedown on Lovato's cell, but "Wilson was blamed." *Id.* The next day, Lovato and three other inmates entered Mr. Wilson's cell and stabbed him. *Id.*

Being stabbed certainly meets the deliberate indifference standard's objective component. As to the subjective factor, Defendants label Mr. Wilson's allegation that on September 13, 2018, he told Defendants Wilda and Wood "that an unidentified inmate and his 'comrades' had threatened to stab Mr. Wilson" as "vague and uncorroborated." Dkt. #38 at 13. This is a frankly ludicrous framing of the Prisoner Complaint. Mr. Wilson clearly refers to Lovato "as the individual who had broken his jaw three months earlier." He then alleges that Defendants Wilda and Wood searched Lovato's cell after "several inmates came into Wilson's cell with a sharpened shank" the day before the actual attack. While not stated explicitly, it is apparent that Lovato was on one of those inmates. Why else would his cell be searched? Finally, Mr. Wilson does explicitly allege that Lovato was one of the one of the inmates who stabbed him. Thus, Mr. Wilson has demonstrated that both two defendants had actual knowledge of a substantial risk of

---

Wilson does not allege that Defendant Wilda instructed the guards to "march him around," tackle him, or use a taser on him, or even that he knew that they had done so. Moreover, Mr. Wilson asserts that he informed Defendant Wilda that *other inmates* were the ones threatening him, not guards. Thus, the "serious harm" Mr. Wilson suffered on this occasion is unrelated to Defendant Wilda's supposed subjective knowledge.

harm. The Eighth Amendment deliberate indifference claim should go forward against them.

## C. First Amendment Retaliation

In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted). To state a First Amendment retaliation claim against a government official, a plaintiff must allege:

> (1) that he was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

"[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Mr. Wilson alleges three instances of unconstitutional retaliation against Defendants Vaughn, Swingle and Mascarenas, respectively.

### A. Defendant Vaughn

In his Prisoner Complaint, Mr. Wilson claims that Defendant Vaughn's campaign of harassment against him, which included the use of racial slurs and threats and ultimately ended in the January 17, 2020 assault, was in retaliation for Mr. Wilson filing a lawsuit. *See* Dkt. #1 at 7 ("Vaughn was retaliating against me for filing a lawsuit.").

20

This is facially deficient. Mr. Wilson's lone, conclusory assertion does not plausibly allege that Defendant Vaughn's behavior was motivated by Mr. Wilson's history of litigation.

### B. Defendant Swingle

Mr. Wilson claims that on July 25, 2019, Defendant Swingle came into his cell, ripped his legal books, threw what he was working on on the floor, and then had him sent to segregation by falsely claiming Mr. Wilson threatened her. *Dkt. #1* at 8. Mr. Wilson asserts that she told him the reason she was harassing him: "That's what you get for thinking you can sue my coworkers." *Id.* at 8.

Mr. Wilson has a clearly established constitutional right to file lawsuits. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Retaliation for exercising that right that includes the destruction of legal papers and being wronfully placed in segregation would "chill" a person of ordinary firmness from continuing file lawsuits. *See, e.g., Banks v. Katzenmeyer*, 645 F. App'x 770, 773 (10th Cir. 2016) (unpublished) ("The allegation of multiple 'fabricated' write-ups within a short period of time presents a sufficient allegation of injury to satisfy the 'chill' test."). The Court rejects Defendants' argument that these harms were *de minimus*. The Court likewise rejects their contention that the "but for" element was not alleged because Mr. Wilson was sent to segregation because he threatened Defendant Swingle. This is an obvious factual dispute that cannot be resolved on a Rule 12(b)(6) motion.

### C. Defendant Mascarenas

Defendant Mascarenas' allegedly retaliatory conduct occurred at CSP on July 19, 2018. Dkt. #1 at 11–12. She told Mr. Wilson that he was "dumb enough to say, [']White

let everyone drink[']," when Mr. Wilson was "the only one we want." *Id.* at 11. She then "maliciously" wrote up Mr. Wilson instead of the inmates that were drinking, which resulted in "sanctions including the loss of visits and telephone for an entire year . . . to hinder legal proceedings." *Id.* at 12.

Although it is not exactly clear, the Court presumes that Mr. Wilson filed a grievance against Defendant White in connection with the April 18, 2020 assault by Lovato, and that this is what Defendant Mascarenas was referring to when she called Mr. Wilson dumb for informing on Defendant White. Filing grievances is a constitutionally protected activity. *See Gee*, 627 F.3d at 1189. Being sanctioned and losing visiting and telephone privileges for a year would certainly chill an ordinary person from filing grievances or reporting misconduct by guards. Finally, accepting Mr. Wilson's allegations as true, as the Court must at this stage, the reason Defendant Mascarenas wrote up Mr. Wilson was to get back at him for implicating her colleague in a blatant instance of dereliction of duty. This is enough to state a retaliation claim under the First Amendment.

## IV. RECOMMENDATION

Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss (Dkt. #38) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **GRANTED** as to the Eighth Amendment excessive force claim against Defendants Wilda, Hagans, and Will;

- **GRANTED** as to the Eighth Amendment deliberate indifference claim against Defendant Will;

- **GRANTED** as to the First Amendment retaliation claim against Defendant Vaughn;

- **DENIED** as to the Eighth Amendment deliberate indifference claim against Defendants Hagans, White, Johnson, Wilda, and Wood; and

- **DENIED** as to the First Amendment retaliation claim against Defendants Swingle and Mascarenas.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:        April 15, 2020
              Denver, Colorado

N. Reid Neureiter

N. Reid. Neureiter
United States Magistrate Judge