IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02279-CMA-NRN

TERANCE D. WILSON,

Plaintiff,

v.

LT. JOHNSON;
C. O. VAUGHN,
SGT. WHITE,
LT. WILDA,
C. O. JORDAN,
SGT. WILL
C. O. TOLENTINO,
LT. QUINLIN,
SGT. SUPPES,
MJR. DONALD NUNEZ,
BRENDON R. MARKHAM,
SGT. WEAVER,
LT. WINEGARDNER,
C. O. WOOD,
SILVIA VALDEZ-GONZALES,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT –
FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THE PLRA
(Dkt. #212)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This prisoner civil rights case is before the Court pursuant to an Order (Dkt.

#230) issued by Judge Christine M. Arguello referring Defendants Lt. Johnson, C.O.

Vaughn, Sgt. White, Lt. Wilda, C.O. Jordan, Sgt. Will, C.O. Tolentino, Lt. Quinlin, Sgt.

Suppes, Mjr. Donald Nunez, Brendon R. Markham, Sgt. Weaver, Lt. Winegardner, C.O.

Wood, and Silvia Valdez-Gonzales' (collectively "Defendants") Fed. R. Civ. P. 56 Motion for Summary Judgment – Failure to Exhaust Administrative Remedies Under the PLRA ("Motion for Summary Judgment") (Dkt. #212). Plaintiff Terance D. Wilson filed a response (Dkt. #218) and Defendants filed a reply (Dkt. #237). The Court heard argument on the subject motion (*see* Dkt. #238) and has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is **RECOMMENDED** that that the subject motion (Dkt. #212) be **GRANTED**.

## BACKGROUND

This case began as one of several filed by Mr. Wilson relating to his conditions of confinement at various Colorado Department of Corrections ("CDOC") facilities, including Buena Vista Correctional Facility ("BVCF"), Sterling Correctional Facility ("SCF"), and Colorado State Penitentiary ("CSP"). Mr. Wilson was eventually appointed counsel (Dkt. #95) who filed the operative pleading, the Third Amended Complaint and Jury Demand ("TAC") (Dkt. #125), which consolidated all the claims and parties into this lawsuit. Mr. Wilson's appointed counsel were subsequently given leave to withdraw after Mr. Wilson terminated their representation. (*See* Dkt. ##159 & 161.)

**Mr. Wilson's Allegations**

The Court will address the details of Mr. Wilson's claims below, but the general outline of his case can be summarized as follows. In 2012, Mr. Wilson was convicted for killing a member of the Sureños street gang. As a result, during his years of incarceration, he has been threatened and assaulted numerous times by gang-affiliated inmates. According to Mr. Wilson, correctional officers and other prison officials have

permitted, encouraged, facilitated, and even participated in these attacks, at least in part due to Mr. Wilson's history of filing lawsuits against the CDOC and its employees.

Mr. Wilson asserts three claims for relief under 42 U.S.C. § 1983.

**First Claim for Relief – Excessive Force, Cruel and Unusual Punishment**

Mr. Wilson's Eighth Amendment claim for excessive force/cruel and unusual punishment is asserted against Defendants Wilda, Vaughn, Jordan, Tolentino, Quinlin, Suppes, Markham, and Weaver for assaults by guards that took place in December 2018 and on January 16, 2019, and March 18–19, 2020. (Dkt. #125 at 19–20, ¶¶ 84– 89.)[1]

Mr. Wilson alleges that in December 2018 he was transferred from SCF back to BVCF, where he previously had been assaulted and stabbed that September. (*Id.* at 11–12, ¶ 51.) Mr. Wilson informed Defendant Wilda that other inmates intended to kill him. (*Id.* at 12, ¶ 55.) Defendant Wilda had Mr. Wilson's hands and feet bound and had him paraded through the cell block, where inmates shouted threats at him. (*Id.* ¶ 56.) Mr. Wilson resisted being forced into a cell on the unit and, pursuant to Defendant Wilda's instructions, guards beat and tased him. (*Id.* at 13, ¶ 58.) Although Mr. Wilson was sent to solitary confinement, he believes that his refusal to remain in the cell saved his life. (*Id.* ¶ 59.)

On January 16, 2019, Mr. Wilson, who had been moved to CSP, was cuffed and shackled and about to be escorted to the shower when Defendant Vaughn, who was prohibited from interacting with Mr. Wilson "due to past misconduct and discipline,"

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

assaulted Mr. Wilson without provocation. (*Id.* at 14, ¶ 64.) Defendants Jordan and Will joined in the attack. (*Id.* ¶¶ 65–66.)

On March 18, 2020, while Mr. Wilson was at SCF, Defendant Tolentino squeezed Plaintiff's hand, which had been broken in 2018, while escorting Mr. Wilson to the showers. (*Id.* 15, ¶ 70.) Defendant Tolentino, who was upset at being named in one of Mr. Wilson's lawsuits, then "smack[ed] him on the buttocks and the head" and slammed his face into the wall. (*Id.* ¶ 71.) Defendant Quinlin, who had also been sued by Mr. Wilson, arrived due to Defendant Vaughn's "fake" back-up call, and proceeded to strike Mr. Wilson in the genitals and face. (*Id.* at 15–16, ¶¶ 73–74.) Quinlin and Defendant Suppes also choked Mr. Wilson unconscious. (*Id.* at 16, ¶¶ 74–75.) Mr. Wilson was taken to an observation room and stripped naked where Defendants Quinlin and Markham threatened him over the civil suits. (*Id.* at 16–17, ¶ 77–78.) The next day, Defendant Markham, at Defendant Weaver's urging, pepper sprayed Mr. Wilson's genitals through a mail slot. (*Id.* at 17, ¶¶ 80–81.)

**Second Claim for Relief – Deliberate Indifference/Failure to Protect**

Mr. Wilson alleges that Defendants Johnson, White, Winegardner, Nunez, Wilda, and Wood violated his Eighth Amendment rights by failing to protect him from two separate attacks by the same inmate in 2018. (*Id.* at 20–22, ¶¶ 90–95.)

Mr. Wilson was moved to CSP in February 2018. (*Id.* at 6–7, ¶ 25.) Shortly thereafter, inmate Dorian Lovato, a member of a rival gang, informed several correctional officers, including Defendants Johnson and White, that he was being pressured to assault Mr. Wilson. (*Id.* at 7, ¶ 26.) Other inmates were saying similar things. (*Id.* ¶¶ 27–28.) On April 18, 2018, Defendant White "engaged in a celebration of

sorts" where inmates were openly getting drunk and roaming the pod. Lovato and another inmate punched Mr. Wilson from behind, breaking his jaw in three places. (*Id.* at 8, ¶ 30.) When Mr. Wilson informed Defendant White of the assault, Defendant White encouraged Mr. Wilson to fight Lovato and the other inmate rather than "snitch." (*Id.* ¶ 31.) Mr. Wilson was told that Defendant White knew about the impending assault and did not stop it, and Mr. Wilson was refused immediate medical attention. (*Id.* ¶ 32.)

Even though Mr. Wilson was assaulted again when he was taken to the infirmary, he alleges that Defendants White, Johnson, and Nunez, and their supervisor Defendant Winegardner (who was head of Internal Classification Committee) refused to verify that he was in danger and qualify him for placement in protective custody. (*Id.* at 8–9, ¶ 34.)

Mr. Wilson was moved to BVCP in August 2018, but Defendants Johnson, White, Nunez, and Winegardner, in coordination with Defendants Wilda and Wood, continued to make decisions regarding Mr. Wilson's protective custody status. On September 13, 2018, Defendants Nunez, Winegardner, Johnson, and White decided together that Mr. Wilson would be placed in the same pod and tier as Lovato. (*Id.* at 9, ¶ 38.) Mr. Wilson informed Defendants Wilda and Wood that he was imminent danger, but they said that they were waiting for the attack to happen. (*Id.* at 10, ¶¶ 39–40.) Mr. Wilson was attacked by Lovato and three other inmates on September 19, 2018. (*Id.* ¶ 43.) He was severely beaten and stabbed and his hand was broken. (*Id.*) Defendant Wood had Mr. Wilson written up for assaulting Lovato and Mr. Wilson was placed in solitary confinement. (*Id.* at 11 ¶ 46.*)

**Third Claim for Relief – First Amendment Retaliation**

In this claim for relief, Mr. Wilson alleges that Defendants Johnson, Vaughn, White, Wilda, Tolentino, Quinlan, Suppes, Nunez, Markham, Winegardner, and Valdez-Gonzalez retaliated against him for filing grievances and lawsuits, activities which are protected by the First Amendment. (*Id.* at 22–23, ¶¶ 96–97.) Defendant Valdez-Gonzalez, in particular, is alleged to have been upset at Mr. Wilson because Mr. Wilson filed a complaint against her for sexual harassment. (*Id.* at 18, ¶ 85.) She retaliated by confiscating and damaging Mr. Wilson Bible and then later placing a razor blade in it, causing Mr. Wilson to spend one year in solitary confinement for possessing dangerous contraband. (*Id.* ¶¶ 86–89.)

**Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on the grounds that Mr. Wilson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), and CDOC regulations. Defendants' Motion for Summary Judgment contains a 15-paragraph Statement of Undisputed Material Facts ("SUMF") (*see* Dkt. #212 at 6–8, ¶¶ 1–15) and attaches an appendix (Dkt. #212-1) that includes a signed declaration from the CDOC's grievance officer (*id.* at 4–6), the CDOC's Administrative Regulation ("AR") 850-04 outlining the grievance procedures (*id.* at 7–23), Mr. Wilson's grievances from April 18, 2018 through March 18, 2020 (*id.* at 24–149), and a chart of Mr. Wilson's claims and associated grievances (*id.* at 150–57).

According to Defendants' SUMF,[2] the CDOC maintains a mandatory, three-step administrative remedy process, memorialized in AR 850-042, which governs inmate grievances. (*Id.*, SUMF ¶¶ 2–4.) Pursuant to those procedures, "inmates must first attempt to resolve any issue or complaint they have by filing a document, known as a Step 1 grievance, within 30 days of the discovery of the issue or complaint, to which an appropriate CDOC staff person then responds in writing." (*Id.* ¶ 4.) If the inmate is not satisfied with the response, within five days he must file a Step 2 grievance (*Id.* ¶ 5.) If still unsatisfied, the inmate must then file a Step 3 grievance within five days of receipt of the Step 2 grievance response. (*Id.* ¶ 6.) The Step 3 grievance is the final step in the CDOC grievance process. (*Id.* ¶ 7.)

Each grievance must address only one problem or complaint and include a description of the relief requested. Problems that arise from the same incident or set of facts must be included in one grievance even though it may involve multiple employees, contract workers, or volunteers. (*Id.* ¶ 8.) A substantive issue or remedy may not be added at a later step. The issue and remedy contained in the original grievance must be incorporated into each subsequent step of the grievance or it will be deemed waived. (*Id.* ¶ 9.)

The grievance officer may deny a grievance on substantive grounds, after which the grievance officer will certify in the response that the offender has exhausted the grievance process. (*Id.* ¶ 10.) The grievance officer may also deny a grievance on

---

[2] The Court must rely on Defendants' SUMF because Mr. Wilson's response does not comply with Judge Arguello's Practice Standards, which, for example, required Mr. Wilson to respond to Defendants' material facts with numbered paragraphs admitting or denying each of Defendants' asserted facts, and providing a factual basis for a denial.

procedural grounds "if the grievance is incomplete, inconsistent with a former step, incomprehensible, illegible, requests relief that is not available, fails to request relief, or in any other way fails to comply with the provisions of this regulation." (*Id.* ¶ 11.) If a grievance is denied on procedural grounds, the grievance officer will certify in the response that the offender has *not* exhausted the grievance process. (*Id.*)

Mr. Wilson filed 58 grievances for incidents allegedly occurring between April 18, 2018 through March 18, 2020, the period covered by the TAC. (*Id.* ¶ 13.) According to Defendants, all of Mr. Wilson's grievances were either abandoned before Step 3 or denied due to procedural defects. (*Id.* ¶¶ 14–15.)

## LEGAL STANDARDS

### Pro Se Plaintiff

Mr. Wilson is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct

arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**Motion for Summary Judgment under Rule 56**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (1986).

**Administrative Exhaustion Under the PLRA**

Judge Arguello explained at length the requirements of and purposes behind the PLRA's administrative exhaustion requirement in an earlier lawsuit brought by Mr. Wilson:

> The PLRA provides that a prisoner must exhaust all available administrative remedies before he or she can bring any action with respect to prison conditions. 42 U.S.C. § 1997e(a). A prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal[.]" *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006); *see also Patel v. Fleming*, 415 F.3d 1105, 1109–10 (10th Cir. 2005) (concluding federal inmate failed to exhaust administrative remedies because he failed to file Administrative Remedy Request within twenty days of the date on which the basis for the Request occurred); *Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 703–04 (10th Cir. 2008) (affirming dismissal of plaintiff's claims for failure to exhaust administrative remedies under PLRA where plaintiff failed to file administrative complaint before deadline). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91–92.
>
> The United States Supreme Court is unequivocal that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 84. Exhaustion is a precondition to filing a suit, and "an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012).
>
> In 2016, the Supreme Court took its construction of the PLRA's exhaustion mandate up a notch and foreclosed any special exceptions to that mandate. In *Ross v. Blake*, the Supreme Court held that the "only limit" to PLRA's exhaustion "mandate is the one baked into its text: [a]n inmate need exhaust only such administrative remedies as are 'available[,]' which included three narrow exceptions that are not applicable in the instant case. [578 U.S. 632] 136 S. Ct. 1850, 1856–60, 1862 (2016). The United States Court of Appeals for the Fourth Circuit had reversed a district court's decision dismissing the plaintiff's suit for failure to exhaust administrative remedies where the plaintiff did not follow the prison's prescribed procedures for obtaining an administrative remedy because he mistakenly thought that an informal

complaint and subsequent internal investigation "served as a substitute for that otherwise standard process." *Id.* at 1855. The Fourth Circuit reasoned that because the PLRA's "exhaustion requirement is not absolute," "special circumstances" could justify a prisoner's failure to comply with administrative procedural requirements. *Id.* (quoting *Blake v. Ross*, 787 F.3d 693, 698 (4th Cir. 2015)). The Supreme Court disagreed.

The Supreme Court rejected the Fourth Circuit's "judge-made exceptions" to the PLRA's mandatory exhaustion requirement and explained that the "[s]tatutory text and history alike foreclose the Fourth Circuit's adoption of a 'special circumstances' exception to that mandate." *Id.* at 1856. The Court observed that Section 1997e(a)'s "language is 'mandatory[,]' "and as such, outside of one statutory qualifier, "the remedies must indeed be 'available' to the prisoner[,]" "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* (citing 1997e(a)). "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *Id.* at 1857 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Statutory exhaustion requirements that do not explicitly provide for judicially created exceptions foreclose judicial discretion in furnishing such exceptions. *Id.* "A statutory exhaustion provision stands on a different footing. There, congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* The Supreme Court noted that "[t]ime and time again, the Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Id.* Moreover, the Supreme Court's previous restraints included its construction of the "PLRA's exhaustion provision—rejecting every attempt to deviate . . . from its textual mandate." *Id.* As a result, the Supreme Court held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA." *Id.* at 1862.

*Wilson v. Phillips*, No. 14-cv-01459-CMA-NRN, 2019 WL 2288346, at *3–5 (D. Colo. May 29, 2019) (footnote omitted), *aff'd sub nom. Wilson v. Phillip*, 807 F. App'x 872 (10th Cir. 2020).

The failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216. Thus, Defendants bear the burden of demonstrating that Mr. Wilson did not utilize administrative remedies. *Id.* If they prove that Mr. Wilson failed to exhaust, the burden

shifts to Mr. Wilson to show that remedies were unavailable. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). There are three circumstances under which remedies are "unavailable": (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

## ANALYSIS

The Court has carefully reviewed all the grievances attached to the Motion for Summary Judgment and will discuss in turn whether Mr. Wilson exhausted each of his three claims for relief.

**Abandoned Grievances**

First, the record demonstrates that several grievances filed by Mr. Wilson were not exhausted because he never reached Step 3. These include the following: Grievance ##R-CS18/19-00133750-1, 2 (Dkt. #212-1 at 47, 48); Grievance #R-BV18/19-00137113-1 (*id.* at 49); Grievance # R-BV18/19-00143372-1 (*id.* at 50); Grievance ##R-BV18/19-00138308-1, 2 (*id.* 51, 52); Grievance ##R-CS18/19-00138874-1, 2 (*id.* at 53, 54); Grievance ##R-CS18/19-00136345-1, 2 (*id.* at 57, 58); Grievance ##R-CS18/19-00136348-1, 2 (*id.* at 59, 60); Grievance #R-CS18/19-00136690-1 (*id.* at 61); Grievance ##R-SF 19/20-00161031-1, 2 (*id.* at 62, 63); Grievance ##R-CS18/19-00133751-1, 2 (*id.* at 73, 74); Grievance ##R-CS18/19-00133752-1, 2 (*id.* at 75, 76); Grievance #R-BV18/19-00137358-1 (*id.* at 100);

Grievance #R-SF19/20-00157934-1 (*id.* at 109); Grievance #R-SF19/20-00161152-1 (*id.* at 113); Grievance #R-SF19/20-00161321-1 (*id.* at 130); Grievance ##R-SF19/20-00159978-1, 2 (*id.* at 141, 142); Grievance #R-SF19/20-00161152-1 (*id.* at 143); Grievance ##CS18/19-00139334-1, 2 (*id.* at 144, 145); Grievance #CS18/19-00139334-1, 2 (*id.* at 146); and Grievance #R-CS18/19-00153666-1 (*id.* at 147). To the extent Mr. Wilson's claims rely on these grievances, they must be dismissed pursuant to the PLRA's exhaustion requirement.

**First Claim for Relief**

As noted above, Mr. Wilson's excessive force/cruel and unusual punishment claim is asserted against Defendants Wilda, Vaughn, Jordan, Tolentino, Quinlin, Suppes, Markham, Weaver, and Will[3] for assaults in December 2018 and on January 16, 2019 and March 18, 2020. The Court will address each incident and any related grievances.

### December 2018 Incident (Grievance #R-BV18/19-00143372-1)

Mr. Wilson filed a grievance after the incident in December 2018 where Mr. Wilson alleges that Defendant Wilda and unnamed guards shackled and paraded him through the pod at BVCF and then beat and tased him when he refused to enter a cell. *See* Dkt. #212-1 at 50.) However, he did follow up at Step 2 or Step 3. Moreover, this grievance does not request a remedy. Accordingly, any claim for relief arising from this event has not been administratively exhausted and should be dismissed.

---

[3] Although the TAC alleges Defendant Will was involved in the January 16, 2019 beating (*see* Dkt. #125 at 14, ¶ 66), he was not named in the First Claim for Relief. Out of caution the Court presumes that Mr. Wilson meant to assert this claim against Defendant Will.

**January 16, 2019 Incident (Grievance ##R-CS18/19-145187-1, 2, 3)**

Mr. Wilson did file grievances in the wake of the alleged assault that took place on January 16, 2019. (*See id.* at 24–26.) In the Step 1 grievance, Mr. Wilson claims that his beating at the hands of Defendants Vaughn and Jordan "was all an act to house me in seg[regation] and assault me." (*Id.* at 24.) In denying the grievance, the responding CDOC official informed Mr. Wilson,

> In review of your accounts of the events on January 16, 2019, I have found four reports detailing your actions. Your verbal and physical actions dictated the staff's responses so as to maintain the security of the facility. Your placement into Segregation was due to your behaviors and to ensure safety and security of the facility and other offenders.

(*Id.*)

Mr. Wilson filed a Step 2 grievance on February 8, 2019. (*Id.* at 25.) Mr. Wilson wrote that the assault "was set into motion in order to get me removed from that facility [BVCF]." (*Id.*) The responding officer could not find any information to substantiate Mr. Wilson's accusations against Defendant Vaughn or other CDOC staff members. (*Id.*)

Mr. Wilson filed a Step 3 grievance on March 12, 2019, which mainly attacks the character and integrity of Daniel Barbero, the CDOC officer who responded at Step 2. (*Id.* at 26.)

On April 11, 2019, Mr. Wilson's Step 3 grievance was denied on two procedural grounds. (*Id.* at 27.) First, the grievance officer stated that the subject of the grievance was not an issue which the grievance process was designed to address, as the grievance procedure "may not be used to seek review of COPD convictions, administrative segregation placement, administrative segregation placement (currently listed as MCU), decisions of the Reading Committee, classification, sex offender designation, Parole Board decisions, sentence computation, security threat (STG)

status, or records requests." (*Id.* (emphasis in original) (citing AR 850-04(IV)(D)(2).) Second, the grievance officer stated that the Step 3 grievance "failed to provide a clearly stated remedy." (*Id.*) Accordingly, Mr. Wilson was deemed to "have <u>not</u> exhausted" his administrative remedies. (*Id.* (emphasis in original).)

The Court finds that Mr. Wilson did not exhaust his administrative remedies regarding to the January 16, 2019 incident. First, to the extent that Mr. Wilson intended to assert this claim against Defendant Will, nothing in the grievance indicates that this individual was involved in the alleged assault. Second, it is unclear what remedy is being requested. Although the Step 1 grievance appears to ask that the incident be investigated, Steps 2 and 3 are largely devoted to slandering Defendant Vaughn and insulting Mr. Barbero. A grievance that fails to request a meaningful remedy can be denied on procedural grounds. Moreover, even if Mr. Wilson did request a meaningful remedy, on February 6, 2019, a hearing was held and Mr. Wilson was convicted of an attempted assault on staff in violation of the Code of Penal Discipline ("COPD") in connection to the incident. (*Id.* at 29.) His Step 2 and 3 grievances were submitted after this conviction. Accordingly, they were properly denied insofar as they sought review of that decision. This portion of Mr. Wilson's First Claim for Relief should be dismissed.

### March 18–19, 2020 Incidents (Grievance ##R-SF19/20-00168951-1, 2, 3)

On April 2, 2020, Mr. Wilson filed a Step 1 grievance regarding the actions of Defendants Quinlin, Tolentino, Markham, and Weaver on March 18 and 19, 2020. (*Id.* at 32.) The allegations largely track those in the TAC, although the grievance does not mention any physical assault committed by Defendant Suppes. Mr. Wilson requested

that some of his clothing be returned to him and stated, "I need to be removed from S.C.F." (*Id.*)

The Step 1 grievance was denied because the responding officer was "not able to facilitate a move for" Mr. Wilson and Mr. Wilson was instructed "to fill out a miscellaneous withdrawal to pay for the clothing that you are missing." (*Id.*)

Mr. Wilson filed a Step 2 grievance that mostly focused on being given new clothing. (*Id.* at 33.) The grievance was granted in part by providing Mr. Wilson with the clothing he had requested. (*Id.*)

Mr. Wilson then filed a Step 3 grievance, which was denied because it introduced multiple new issues that were not contained in the earlier grievances, such as complaints about guards interfering with his legal mail and phone calls. (*Id.* at 30.) Mr. Wilson was reminded that only one issue may be addressed per grievance and that issues and remedies contained in the original grievance that are not incorporated or renewed in subsequent steps are deemed a waived. (*Id.*) Moreover, the relief that was requested in the Step 1 grievance that Mr. Wilson be transferred to a different facility (which was not renewed in subsequent grievances) was determined to be a classification issue that is outside the grievance procedures.

The Court finds that Mr. Wilson's grievances were properly rejected because they did not follow the requisite CDOC procedures. Specifically, the subject of the grievances shifted over time, and the regulations require that the issue in the original grievance be incorporated and renewed at each subsequent step. (*See id.* at 11; AR 850-04(IV)(D)(7).) Moreover, the remedy requested (at least at Step 1)—that Mr. Wilson be moved out of SCF—is not one that can be obtained through the grievance

procedure. (*See id.* at 10; AR 850-04(IV)(D)(2)(b) ("Classification is entirely at the discretion of the administrative head and internal classification committee of each facility.").)

Mr. Wilson did not exhaust administrative remedies for his Eighth Amendment excessive force/cruel and unusual punishment. Accordingly, the First Claim for Relief should be dismissed in its entirety.

**Second Claim for Relief**

Mr. Wilson's second claim alleges Defendants Johnson, White, Winegardner, Nunez, Wilda, and Wood failed to protect him from two attacks on Mr. Wilson by inmate Lovato on April 18[4] and September 19, 2018. Mr. Wilson filed three Step 3 grievances during this period related to the attacks. However, he did not exhaust his administrative remedies because he did not comply with the CDOC's mandatory grievance procedures.

Before turning to the three grievances, the Court notes that Mr. Wilson did not file any grievances against Defendant Winegardner in relation to either of the attacks by Lovato, and did not did not file a grievance against Defendant White as to the September 2018 assault. Moreover, although Mr. Wilson filed several grievances against Defendants Wilda and Wood, none of them reached Step 3 and, therefore, were not exhausted.

---

[4] One grievance states that the attack took place on April 16, 2018; the TAC gives the date as April 18, 2018.

**Grievance ##R-CT 17/18-00131121-1, 2, 3**

The first grievance arising from the April 2018 assault was filed on May 18, 2018, and claims that Defendant White prevented Mr. Wilson from receiving medical attention and tried to set Mr. Wilson up to fight Lovato and his other attacker. (Dkt. #212-1 at 34.) The grievance was denied, at least in part, because it did not request a remedy. (*Id.*)

Mr. Wilson filed a Step 2 grievance that was also denied as the responding CDOC officer viewed it as a "challenge to the response to your Step I grievance, raising new issues." (*Id.* at 35.) The Step 2 grievance also failed to identify any remedy. (*Id.*)

In response to Mr. Wilson's Step 3 grievance (*id.* at 36), the grievance officer stated,

> I could not determine from your Step 3 grievance or any other step, what relief you are asking for. When drafting a grievance you must include what remedy you are seeking. I cannot make a determination of the facts if no solution or restitution is plead. There is no way I can determine what it is that would satisfy your grievance. You failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies. This is the final administrative action in this matter.

(*Id.* at 37 (emphasis in original).)

The Court finds that Mr. Wilson did not properly exhaust his administrative remedies through these grievances. Again, CDOC regulations state that grievances that fail to request relief may be denied on procedural grounds, and when a grievance is denied for a procedural error, the grievance process has not been exhausted.

**Grievance ##R-CS18/19-00138882-1, 2, 3**

Mr. Wilson filed a Step 1 grievance on October 5, 2018. In it, he raises several issues, including his placement in general population in CSP, his property being withheld, losing his phone privileges, and how the fight with Lovato was characterized by Defendant Nunez. (*Id.* at 40.) The grievance was denied because Mr. Wilson "stated

several issues in this grievance" that "have no substance" and could not be validated, and because the grievance failed to state the resolution sought by Mr. Wilson. (*Id.*)

Mr. Wilson followed up in a Step 2 grievance about how Defendant Johnson and other CDOC officers lie to cover up "a case of prejudice and racism." (*Id.* at 41.) It is unclear to the Court what this refers to as Defendant Johnson is not mentioned in the Step 1 grievance. In any event, the grievance was denied because it introduced new subjects. (*Id.*)

At Step 3, Mr. Wilson states, "Further, you continue to miss opportunities to remedy what you have done, yet instead you continue to be combative + cause + create further incidents + issues through malice, negligence + lies. Process this." (*Id.* at 38.) This grievance was appropriately denied (*see id.* at 39) because its subject, to the extent it has one, is different than those subjects identified in Step 1. Furthermore, none of the grievances contain a proposed remedy; "Process this" is not a meaningful remedy to request even if had been made at Steps 1 and 2. Given these defects, any claim in this litigation that can be traced to this grievance has not been administratively exhausted and should be dismissed.

### Grievance ##R-BV18/19-00137363-1, 2, 3

In Mr. Wilson's Step 1 grievance, filed in August 2018, he states that another CSP correctional officer knew Lovato and other inmates were planning on harming him, and that this officer told him Defendant Nunez was "against him" and fabricated the story that Mr. Wilson started the fight with Lovato. (*Id.* at 45.) Mr. Wilson stated he needs an investigation by the Office of the Inspector General ("OIG").

The Step 1 grievance was denied because the responding officer was "not in a position of authority to direct anyone from the OIG office to investigate your claim" and Mr. Wilson was told he could contact OIG directly. (*Id.*) Mr. Wilson then requested OIG's contact information at Step 2, which was denied because Mr. Wilson "did not identify the circumstances which give rise to your complaint," i.e., his request constituted a different subject than the one identified at Step 1. (*Id.* at 46.) Mr. Wilson's Step 3 grievance states, in its entirely, "The circumstances which give rise to my complaint? I intend to pursue civil intervention against a good majority of you." (*Id.* at 42.)

Unsurprisingly, Mr. Wilson's Step 3 grievance was denied, and Mr. Wilson was told that he had not exhausted his administrative remedies. As Mr. Wilson was again advised, "When drafting a grievance you must include what remedy you are seeking. I cannot make a determination of the facts if no solution or restitution is plead. There is no way I can determine what it is that would satisfy your grievance." (*Id.* at 43.) Mr. Wilson was given the OIG's address but his request for an OIG investigation, which was made only at Step 1, could not be accomplished through the grievance procedure. The Court agrees that these obvious procedural flaws mean that Mr. Wilson did not exhaust administrative remedies regarding the events described in these grievances.

**Third Claim for Relief – First Amendment Retaliation**

Mr. Wilson alleges that Defendants Johnson, Vaughn, White, Wilda, Tolentino, Quinlan, Suppes, Nunez, Markham, Winegardner, and Valdez-Gonzalez violated his First Amendment rights by retaliating against him for filing grievances and initiating lawsuits against them and other CDOC officers. The Court will consider the remaining Step 3 grievances.

## Grievance ##R-CS19/20-00166176-1, 2, 3

Mr. Wilson's Step 1 grievance criticizes non-party Warden Thomas Little for his failure to investigate and discipline CDOC officers, including Defendants Johnson, White, and Vaughn, for harassing him. (*Id.* at 64.) He asks for an OIG investigation and polygraphs. (*Id.*) In response, the CDOC placed Mr. Wilson on a grievance restriction for filing multiple frivolous grievances. (*Id.*) Mr. Wilson was only permitted one grievance per calendar month for ninety days. (*Id.*)

At Step 2, Mr. Wilson objected to being placed on a grievance restriction and raised new factual allegations regarding Defendant Vaughn. (*Id.* at 66.) The grievance was denied due to the grievance restriction and because a grievance must only address one problem and clearly state the basis and relief requested in the space provided on the form. (*Id.*)

Plaintiff was deemed to have not exhausted his administrative remedies at Step 3 because the remedy requested at Step 1 (to polygraph staff and for an OIG investigation) were not renewed and reincorporated at Steps 2 or 3. The response goes on to state, "in this instance each grievance step fails to state a specific, cogent, and consistent issue, and instead engages in a protracted expression of dissatisfaction with life and staff in a correctional facility." (*Id.*) The Court finds this to be an accurate summary of most of Mr. Wilson's grievances and this one in particular.

## Grievance ##R-CS19/20-00165680-1, 2, 3

The Step 1 grievance complains that OIG has not adequately investigated Mr. Wilson's claims of abuse and goes on to detail some instances of harassment he has suffered at the hands of Defendants Johnson and White. (*Id.* at 69.) The grievance was

denied because the responding officer was "unable to discern exactly what you deem is the offence," and notes that placement is not a grievable issue and that Mr. Wilson's allegations that staff are communicating about him to other offenders has not been substantiated. (*Id.*)

Mr. Wilson takes issue with this denial at Step 2 and names other officers who have offended him. (*Id.* at 70.) This grievance was denied by Mr. Barbero for several reasons, including a lack of evidence to support Mr. Wilson's claims, the fact that the grievance addresses more than one problem or complaint, that the issues referenced have been the subject of multiple other grievances, and that Mr. Wilson fails to request a remedy. (*Id.*)

At Step 3, Mr. Wilson calls Mr. Barbero a "joke" and states that "the only distant past which you attempt to refer to are your unprofessional actions + the consistency of your lies + ignorance." (*Id.* at 72.) This grievance was denied because Mr. Wilson "articulated a number of different issues and only one issue is allowed per grievance" and the Step 3 grievance was inconsistent with the prior grievances and time. (*Id.*) The Court is compelled to agree that Mr. Wilson did not exhaust his administrative remedies here.

**Grievance ##R-CS17/18-00133539-1, 2, 3**

Mr. Wilson says in his Step 1 grievance that Defendant White warned him that he would be written up for drinking if he continued to file grievances. (*Id.* at 84.) The grievance was denied because it did not request any relief. (*Id.*) This is apparent on its face; Mr. Wilson states at the outset of the grievance that he is "just documenting." (*Id.*) His Step 2 follow up asserts only that "[t]his is a harassment and continued false

reporting under perjury in order to isolate me from my family and retaliate for our lawsuits. There is no way that it is true." (*Id.* at 85.) In response, Mr. Wilson is told "the grievance process is not for your personal use to document matters or to berate, belittle or verbally abuse staff." (*Id.*) At Step 3, Mr. Wilson says that Defendant Nunez, who submitted the Step 2 response, lies and harasses him and that he needs a "true" and "justified" investigation. (*Id.* at 82.) Mr. Wilson was deemed not to have exhausted his administrative remedies because his Step 3 grievance does not "reference what needs to be investigated and why." (*Id.* at 83.) The Court also notes that Mr. Wilson did not ask for an investigation at Step 1; rather, it was filed just to "document" what was happening. A claim based on this incident cannot be maintained under the PRLA's mandatory exhaustion requirement.

**Grievance ##R-BV18/19-00136870-1, 2, 3**

Mr. Wilson claims at Step 1 that Defendant White "continues to run his mouth" and ripped up things in his cell after Mr. Wilson named him in a lawsuit. (*Id.* at 89.) The grievance was denied because Mr. Wilson did not request a meaningful remedy. (*Id.*) Mr. Wilson called the "meaningful solutions" requirement a lie at Step 2, which was again procedurally denied for failing to request a viable remedy. (*Id.* at 90.) His Step 3 grievance (*id.* at 86) was denied for the same reason. (*Id.* at 87.) Because none of his grievances sought a solution or requested restitution, his administrative remedies were not exhausted.

**Grievance ##R-SF19/20-00156131-1, 2, 3**

Mr. Wilson's Step 1 grievance, which complains about being moved to a unit with people he has problems with and about being denied phone time, was denied on

procedural ground. (*Id.* at 101.) Mr. Wilson did not request a remedy—a familiar theme—and he was told that he cannot use the grievance procedure to seek review of his unit assignment. (*Id.*)

At Step 2, Mr. Wilson says that he is "just trying to document for professional use." (*Id.* at 102.) Confusingly, he also states that Defendant Quinlin "personally in the past has himself made efforts to end these abuses," which appears to cut against his claims of retaliation against this defendant. In any event, the grievance was denied for failing to mention a remedy. (*Id.*) It was also noted that CDOC records indicated that Mr. Wilson had used the phone many times in the prior weeks. (*Id.*)

At Step 3, Mr. Wilson complains that Defendant Tolentino called him racial slurs, took his television, legal mail, and medication, and tried to organize other inmates against him. (*Id.* at 103). This grievance was denied on procedural grounds because it introduced several new allegations and it, like the previous grievances, did not provide a requested remedy. (*Id.* at 104.) This is a correct synopsis of the three grievances. Therefore, Mr. Wilson failed to exhaust the grievance process regarding Defendant Tolentino and the actions described at Steps 2 and 3 of these grievances.

**Grievance ##R-SF19/20-00157559-1, 2, 3**

At Step 1 of this grievance, Mr. Wilson restates his allegations that Defendant Tolentino threatened and harassed him and says that "this unprofessional stuff needs to be addressed." (*Id.* at 107.) The grievance was found to be without merit, and it was also noted that requested remedy (to discipline/reprimand an employee) is not a remedy available to offenders. (*Id.*)

Mr. Wilson responded at Step 2 that his allegations had merit and then complained that Tolentino had continued to deny him phone time. (*Id.* at 108.) In response, Mr. Wilson was informed he had already filed grievances regarding the denial of phone time so it was inappropriate to raise it again, and the grievance was also denied because Mr. Wilson failed to request a remedy. (*Id.*)

At Step 3, Mr. Wilson says that the phone policy needs to be restated to not allow "tyrants to hold and control the phone and use it as a form of power." (*Id.* at 105.) This remedy was not requested at Steps 1 or 2 (neither of which clearly stated a remedy), and therefore the Step 3 grievance was denied on procedural grounds as inconsistent. Accordingly, under CDOC regulations, Mr. Wilson failed to exhaust his administrative remedies through the grievance procedure.

**Grievance ##R-SF19/20-00169081-1, 2, 3**

The Step 1 grievance was filed in the wake of March 2020 assault, and in it, Mr. Wilson states he is being retaliated against and being denied grievance forms. (*Id.* at 114.) However, the relief he requests—a new case manager and to be moved to a different facility—was determined to be procedurally improper. (*Id.*) At Step 2, Mr. Wilson reiterated that he was being denied grievance forms, but added numerous additional allegations of mistreatment. (*Id.* at 115.) The grievance was denied on procedural grounds because it references multiple issues on multiple days and because Mr. Wilson did not attempt to resolve the issues informally, as is required by the CDOC regulations. (*Id.*) Mr. Wilson's Step 3 grievance was denied because it was untimely and because it addressed more than one issue. Due to these procedural defects, Mr. Wilson

has not exhausted his administrative remedies as to the events described in these grievances.

### Grievance ##R-SF19/20-00157566 3

Defendants did not attach Mr. Wilson's Step 1 or 2 grievances here, but his Step 3 Grievance was denied because it did not include a remedy and because it was filed more than five calendar days after he received the Step 2 response. (*Id.* at 137.) Mr. Wilson did not follow the necessary grievance procedures and his grievance was denied on procedural grounds. Therefore, he did not exhaust his administrative remedies.

### Other Grievances

Defendants attach a few other grievances that show Mr. Wilson filed grievances that were not completely responded to by CDOC officials. *See* Grievance ##R-SF19/20-00158850-1, 2 (*id.* at 110–12); Grievance ##R-SF19/20-00158848-1, 2 (*id.* at 124–26); Grievance ##R-SF19/20-00159978-1, 2 (*id.* at 141, 142). The first two were filed on the same day, and it appears that Captain Dorcey met with Mr. Wilson to discuss the concerns raised in the grievances, but a response at Step 2 was only submitted by the CDOC in Grievance #R-SF19/20-00158848-2. (*See id.* at 126.) The third grievance was filed a couple of weeks later. In any event, each of these grievances were denied at Step 1 on procedural grounds. (*See id.* at 110, 125, 141.) Specifically, Defendant Quinlin denied each because they did not request a remedy. (*Id.*) Moreover, each denial states that Mr. Wilson "is submitting frivolous grievance against the same staff member." (*Id.*) These procedural defects could not be remedied at later steps. Moreover, insofar as the remedy sought by Mr. Wilson at any of steps was to have the OIG involved in matters and to speak with its representatives, Mr. Wilson had been told

a year prior that this was not a remedy that could be obtained via the grievance process, and he was given the OIG's address so that he could contact it himself. (*See id.* at 43.) The grievances were not administratively exhausted.

Next, Defendants cite but do not attach for review Grievance ##R-CS17/18-00128501-1, 2, 3. Those grievances apparently allege that Defendant Johnson encouraged inmates to threaten Mr. Wilson, which created the conditions allowing for Lovato's April 2018 assault. Those grievances did not exhaust Mr. Wilson's administrative remedies because there were procedural defects and Step 2 was filed out of time. (*Id.* at 151.) Although a review of the actual grievances would have been helpful, the Court can rely on the Declaration of Anthony Decesaro, the CDOC grievance officer who reviewed all of Mr. Wilson's Step 3 grievances for the time frame articulated in the Third Amended Complaint, who declared under penalty of perjury that Mr. Wilson never complied with the PRLA and CDOC's requirements and that each grievance suffered from procedural defects. (*See id.* at 5–6, ¶¶ 11–12.)

Finally, in Grievance ##R-CS18/19-00147048-1, 2, Mr. Wilson complained that Defendant Valdez-Gonzalez took two of his books to retaliate against him for filing grievances. (*Id.* at 148, 149.) But these grievances were granted and the books were returned to him. (*Id.*) Mr. Wilson did not filed a Step 3 grievance indicating otherwise.

**Mr. Wilson's Response**

Defendants have shown that Mr. Wilson failed to exhaust his administrative remedies. Thus, the burden shifted to Mr. Wilson to show that remedies were unavailable. He has not done so. He cites to grievances he believes have been exhausted, but all were denied on procedural grounds which means, under CDOC

regulations, they were <u>not</u> exhausted. He also complains that Defendants did not provide an "authentic or comprehensive accounting of Plaintiff's grievance history," and argues that the CDOC's grievance procedures are a sham. However, he provides no evidence to support either contention. To the contrary, the Court finds that the Defendants' 157-page appendix, which contains most of the relevant grievances, is a comprehensive accounting of Mr. Wilson's grievance history. *See* Dkt. #212-1. The Court finds that Defendants are entitled to summary judgment.

## RECOMMENDATION

Mr. Wilson cannot claim he is unfamiliar with the CDOC's grievance procedures. He filed dozens during the relevant time frame. However, he either abandoned his grievances before Step 3 or his grievances suffered from procedural defects such that he did not exhaust his administrative remedies as to any of his claims. Accordingly, Defendants are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies.

Therefore, it is hereby **RECOMMENDED** that Defendants' Fed. R. Civ. P. 56 Motion for Summary Judgment – Failure to Exhaust Administrative Remedies Under the PLRA ("Motion for Summary Judgment") (Dkt. #212) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need**

not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:      July 12, 2023
            Denver, Colorado         _____
                                     N. Reid. Neureiter
                                     United States Magistrate Judge